IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CHANTILLY AUTO BODY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-1337-AJT-LRV |
| ) | |
| TRUIST BANK, N.A., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Chantilly Auto Body, Inc. ("Chantilly") filed this civil action against Truist Bank, N.A. ("Truist") alleging violations of the Virginia Uniform Commercial Code ("Virginia UCC") and constructive fraud.[1] [Doc. No. 1-1]. Before the Court is Chantilly and Truist's cross Motions for Summary Judgment, [Doc. Nos. 74, 94] (the "Motions"), which the Court took under advisement after a hearing on March 7, 2025.[2] Upon consideration of the Motion, the memoranda in support thereof and in opposition thereto, and for the reasons stated below, Truist's Motion for Summary Judgment, [Doc. No. 74], is **GRANTED**, and Chantilly's Motion for Summary Judgement, [Doc. No. 94], is **DENIED**.

## I. BACKGROUND

The following facts are undisputed by the parties unless otherwise noted:

---

[1] In its Complaint, Chantilly also filed claims for fraud and constructive fraud claims against Evolve Bancorp, Inc. ("Evolve") and Paystand, Inc. ("Paystand"). The Court granted Evolve's motion to dismiss the claims against it, [Doc. No. 31], and Chantilly voluntarily dismissed its claims against Paystand. [Doc. Nos. 51, 52].

[2] Chantilly consents to dismissal of Count III for constructive fraud against Truist but opposes dismissal of Count I under the Virginia UCC. *See* [Doc. No. 82] at 1 n.1.

1

Chantilly is a for-profit corporation that provides automobile repair services to customers in Northern Virginia. [Doc. No. 82] at 8. At all times material to this litigation, Chantilly maintained a business checking account at Truist (the "Account"). *Id.* Ryan Roberts is an owner, corporate vice president, and general manager of Chantilly, and in these roles, he can initiate bank transactions from the Account on Chantilly's behalf. *Id.*

From September 2023 to November 2023, someone impersonating Roberts initiated twenty unauthorized Automatic Clearing House ("ACH") transfers from the Account to Paystand, [Doc. No. 82-2]; [Doc. No. 82] at 9, a financial services company that provides a business-to-business payment platform.[3] [Doc. No. 82] at 9. The individual impersonating Roberts provided Paystand with Roberts' email address and the Account's routing and account numbers, all of which appeared on a series of authorization forms. *See id.* at 8; *see also* [Doc. No. 82-2]. As a result of the twenty unauthorized ACH transactions, Truist removed $172,934.83 from the Account and transferred those funds to Evolve, which deposited those amounts into Paystand's bank account at Evolve. [Doc. No. 82] at 9.

On January 6, 2023, Chantilly provided Truist with five unauthorized ACH return forms in support of its claim that the twenty ACH debit transactions were unauthorized.[4] *Id.* at 10. Truist reviewed the authorization forms for the twenty ACH transfers, and through a letter dated January 31, 2023, denied Chantilly's claim for reimbursement because Truist concluded that the twenty ACH debit transfers were authorized. *Id.* In support of its Motion, Chantilly also asserts that Truist

---

[3] Chantilly had no prior business relationship with Paystand. [Doc. No. 82-1] at 41:14-42:3, 53:8-55:11, 74:19-77:6.
[4] Chantilly had already reported that the transactions were unauthorized to Truist on an unknown date in December 2022. *See* [Doc. No. 82-3] at 26:20–27:1.

did not have any algorithm, procedural process, or method that monitors for fraudulent ACH transaction requests. [Doc. No. 82-3] at 26:10-15.

## II. STANDARD OF REVIEW

Rule 56 permits a court to enter summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of showing that no genuine dispute of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To serve as a bar to summary judgment, facts must be "material," which means that the disputed fact "might affect the outcome of the suit under the governing law." *Id.* The parties agree that there are no genuine issues of material fact and that this action can be adjudicated by way of summary judgment.

## III. DISCUSSION

Under the Virginia UCC, a bank generally bears the risk of loss associated with fraudulent transactions, with two statutory exceptions that do not appear to apply in this case.[5] However, Article 4A of the Virginia UCC only applies to "credit transactions," Va. Code § 8.4A-104, Off. Cmt. 4, and Chantilly argues that the twenty unauthorized ACH transactions were credit transactions, [Doc. No. 82] at 12; [Doc. No. 95] at 9, whereas Truist argues that the transactions were debit transactions that are not covered by Article 4A of the Virginia UCC. [Doc. No. 81] at 1; [Doc. No. 99] at 1-2.

---

[5] The exceptions to bank liability set forth in Virginia Code § 8.4A-202 and 8.4A-203 apply if a bank has adequate security procedures in place to prevent and detect fraudulent transactions. The undisputed evidence is that Truist did not have *any* security procedures in place, *see* [Doc. No. 82-3] at 26:10-15, and Truist would therefore bear the risk of loss under Article 4A if the Virginia UCC applied to this matter.

A credit transaction arises where "the instruction to pay is given by the individual making payment." Va. Code § 8.4A-104, Off. Cmt. 4. Conversely, a debit transaction exists when "the instruction to pay is given by the person receiving payment." *Id.* Generally, before a debit transaction is initiated by the person receiving payment, "the party being charged does have to authorize the transaction" because the payor is not requesting the transaction. *Keppler v. RBS Citizens N.A.*, No. 12–10768–FDS., 2014 WL 2892352, at *8 (D. Mass. June 24, 2014) (citing NACHA Rule 2.1.3[6]) (emphasis added). Put simply, a credit transaction arises where the payment instruction is submitted *by a payor*—or someone impersonating the payor—directly *to the payor's bank* for processing. Conversely, a debit transaction arises where *the payee*—with authorization of the payor—submits the payment instruction *to the payee's bank*, which then removes the money from the payor's bank account.

Based on the plain language of the Virginia UCC, the "sender" is the person "giving the instruction to the receiving bank," Va. Code § 8.4A-103(a)(5), and the "receiving bank" is "the bank to which the sender's instruction is addressed." *Id.* § 8.4A-103(a)(4). Based on these governing Virginia UCC definitions, Truist argues that the ACH transactions are debit transactions because Paystand was the "sender" of the payment instructions, that is, the party that submitted the payment instructions to the "receiving bank," in this case Evolve, which then initiated the ACH transactions, [Doc. No. 81] at 7-9. Therefore, according to Truist, because the party receiving the payment from Truist was Paystand through its account at Evolve, was also the party submitting the payment instruction, these ACH transactions were debit transactions.

---

[6] ACH debit transfers are governed by the NACHA Rules and Operating Guidelines, which the parties concede apply to these transactions. *See* [Doc. No. 81] at 10 n.5.

On the other hand, Chantilly argues that it was the "sender" of the payment instructions because the person impersonating Roberts, who originated the payment instructions ostensibly acting on behalf of Chantilly, authorized Paystand to submit the payment instructions, and the payment instructions should therefore be deemed to have come from Chantilly, making the transaction a credit transaction entitled to Article 4A's protections. [Doc. No. 82] at 12. In support of its position, Chantilly cites to various cases which found a credit transaction but each of those relied upon cases involve a fraudulent ACH transaction that was initiated *by the payor's bank directly* in response to an instruction ostensibly on behalf of the payor. *See Choice Escrow & Land Title, LLC v. BancorpSouth Bank*, 754 F.3d 611, 613 (8th Cir. 2014) ("This litigation began after an unknown third party accessed [plaintiff] Choice's online bank account at BancorpSouth and instructed BancorpSouth to 'wire' . . . money from Choice's account to a bank account in the Republic of Cypress."); *Patco Constr. Co. v. People's United Bank*, 684 F.3d 197, 204 (1st Cir. 2012) (explaining the case arose because "Ocean Bank . . . authorized six apparently fraudulent withdrawals, totaling $588,851.26, from an account held by Patco Construction Company, after the perpetrators correctly supplied Patco's customized answers to security questions"); *Levitz v. New York Comm. Bancorp., Inc.*, No. 63691/2017, 2019 WL 13171540, at *3 (N.Y. Sup. Ct. 2019) (discussing that the fraudulent request for payment was sent to the plaintiff's bank by the imposter, and the plaintiff's bank initiated the transaction); *Grabowski v. Bank of Boston*, 997 F. Supp. 111, 115, 122 (D. Mass. Aug. 7, 1997) (determining that a transaction was a credit transaction because the power of attorney over the bank account transferred the funds to another bank account in his name from the bank account he had access to). None of these cases address a situation where a fraudulent transfer request was submitted to a payee's bank, as is the issue here.

5

Here, the individual impersonating Roberts signed authorization forms on Paystand letterhead which "authorize[d] the above business [Paystand] to debit my [Chantilly's] bank account as outlined in the payment terms of this agreement." [Doc. No. 82-2]. If Chantilly were the "sender" under the UCC, these authorization forms would need to have been given to its bank, *i.e.*, Truist, to begin the ACH transactions, *see* Va. Code § 8.4A-103(a)(5); but instead, Paystand, as the "payee" submitted the request for payment to its bank, Evolve, the "receiving bank," which then began the ACH transaction. Under these undisputed facts, Paystand "g[ave] the instruction to the receiving bank," and Paystand must be deemed the "sender" under the Virginia UCC, *see id.* § 8.4A-103(a)(5). Accordingly, because the entity receiving payment, *i.e.*, Paystand, was also the party giving the instruction to pay, the transactions are debit transactions that fall outside of Article 4A's scope. *See* Va. Code § 8.4A-104, Off. Cmt. 4.[7]

### IV. CONCLUSION

For the reasons stated above, the Court finds and concludes as a matter of law that the transactions at issue were debit transactions, not credit transactions, and therefore not within the scope of Virginia Code § 8.4A-104. Accordingly, it is hereby

**ORDERED** that Truist's Motion, [Doc. No. 74], be, and the same hereby is, **GRANTED**; and it is further

**ORDERED** that Chantilly's Motion, [Doc. No. 94], be, and the same hereby is, **DENIED**.

---

[7] Other courts have reached the same conclusion upon similar facts. For example, in *Azure College, Inc. v. Bank of American, N.A*, 629 F. Supp. 3d 1200 (S.D. Fla. 2022), someone impersonating the president of Pistus, a third-party company that offered payroll and other services, authorized Pistus to initiate six ACH transactions through its bank, Valley National, which caused money to be debited from plaintiff's bank account ostensibly to pay for Pistus' services. *Id.* at 1203. The court determined that because the plaintiff "played no part in initiating the transactions," the "sender" was either Pistus or Valley National. *Id.* at 1205. Accordingly, the Court found that because the sender was also the individual receiving the payment, the transaction was a debit transaction that fell outside of Article 4A of the Florida UCC. *Id.* at 1206. Similarly here, Paystand instructed its bank to initiate the ACH payment, just as Pistus did in *Azure*.

The Clerk is directed, pursuant to Federal Rule of Civil Procedure 58, to enter final judgment in favor of Defendants and to send a copy of this Order to all counsel of record.

Alexandria, Virginia
March 12, 2025

_____
Anthony J. Trenga
Senior U.S. District Judge